# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

**ALLTECH COMMUNICATIONS, LLC,** )
**an Oklahoma Limited Liability** )
**Company,** )
                              )
        **Plaintiff,** )        BASE FILE - 08-CV-210-TCK-FHM
                              )
**v.** )        ( 09-CV-276-TCK)
                              )
**TELWORX COMMUNICATIONS,** )
**LLC, and TIM SCRONCE,** )
                              )
        **Defendants.** )

## OPINION AND ORDER

Before the Court are Defendants Telworx and Tim Scronce's Partial Motion to Dismiss (Doc. 15) and Defendants' Motion to File Amended Answers and Counterclaim (Doc. 38).

**I.     Factual Background**

The following facts are contained in Plaintiff's Complaint. Plaintiff AllTech Communications, LLC ("AllTech") filed suit against Defendants Telworx Communications, LLC ("TelWorx") and Tim Scronce ("Scronce"). AllTech manufactures and services portable cellular towers and is the owner of United States Patent No. 7,062,883 ("'883 Patent") entitled "Self Guying Communication Tower." Scronce is the President, Chief Executive Officer, and managing member of TelWorx, a North Carolina corporation. In 2007, TelWorx was a customer of AllTech for portable communication towers. In August 2007, TelWorx and its officers, including Scronce, participated in setting up another corporation in Pryor, Oklahoma known as TowerWorx International, Inc. ("TowerWorx"). TowerWorx manufactures communication towers and competes with AllTech. The towers manufactured by TowerWorx allegedly infringe the '883 Patent. After the formation of TowerWorx, TelWorx ceased purchasing towers from AllTech and started selling

the towers manufactured by TowerWorx. AllTech sued TowerWorx and its principal Robert Brothers ("Brothers"), a former employee and owner of AllTech, for patent infringement and other claims in a separate action pending before this Court, *AllTech v. Brothers, et al.*, 08-CV-210-TCK-FHM ("08-CV-210"). This action against Scronce and TelWorx has been consolidated with 08-CV-210 for all purposes.

In this action, AllTech alleges that TelWorx and Scronce intentionally and knowingly used improper means to acquire AllTech's trade secrets and then utilized such trade secrets to compete with AllTech. Defendants allegedly acquired these trade secrets from Brothers and Pam Abel ("Abel"), another former employee of AllTech. At all relevant times, Brothers and Abel were bound by non-disclosure agreements and/or fiduciary duties. AllTech further alleges that, by setting up TowerWorx and manufacturing competing towers, Defendants deliberately infringed and induced infringement of the '883 Patent. Finally, AllTech alleges that Defendants used a picture of AllTech's product on the TowerWorx website. The Complaint alleges that Scronce acted within the scope of his employment with TelWorx and that Scronce "used TelWorx as an instrument to carry out his plans to infringe the '883 Patent, misappropriate AllTech's trade secrets, unfairly compete with AllTech, and perform deceptive trade practices." (Compl. ¶ 16.) The Complaint further alleges that Scronce participated in and had full knowledge of all unlawful activities of TowerWorx.

Based on the above allegations, AllTech sued both Scronce and TelWorx for: (1) misappropriation of trade secrets, in violation of 78 O.S. §85, *et seq*; (2) inducing patent infringement and direct patent infringement, in violation of 35 U.S.C. § 271; (3) unfair competition, in violation of Oklahoma common law; and (4) deceptive trade practices, in violation of 78 O.S. §

51, *et seq*. Defendants moved to dismiss all claims against Scronce and all claims against Telworx, except the claim for direct patent infringement.

## II. Motion to Dismiss

### A. Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional

allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

### B. Use of Collective Term "Defendants"

Throughout the Complaint, AllTech does not differentiate between conduct of Scronce and TelWorx and instead collectively refers to actions taken by "Defendants." Contrary to Defendants' arguments, this pleading style does not result in any notice problems or other pleading deficiencies in this case. The Court construes the Complaint as alleging that TelWorx acted by and through Scronce at relevant times, such that the wrongful actions individually committed by Scronce are the same wrongful actions committed by TelWorx. Therefore, Defendants are on sufficient notice as to the conduct alleged, and this case does not present problems that arise when tortious actions that "are entirely different in character" are grouped in a single allegation. *See, e.g., Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that complaint did not provide sufficient notice as to the alleged unconstitutional acts of each defendant because "the allegedly tortious acts committed by Mr. Hendrick as the Director of DHS, Ms. McKinney as the private owner and operator of the daycare where Renee was killed, and the individual social workers in Tahlequah, are entirely different in character and therefore are mistakenly grouped in a single allegation"). Therefore, the Court rejects Defendants' general argument that the Complaint fails to provide notice to each Defendant of the conduct attributable to it.

### C. Personal Liability of Scronce

Defendants argue that Scronce cannot be held personally liable for any torts alleged in the Complaint because all acts were committed within the scope of his employment with TelWorx. This argument is contrary to law and is rejected. Under Oklahoma law, "a[] [corporate] officer may be held liable for the torts that he personally commits." *Okla. Federated Gold and Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) (distinguishing cases brought against corporate officers personally and cases to recover debts of the corporation); *Chellen v. John Pickle Co., Inc.*, 446 F. Supp. 2d 1247, 1293 (N.D. Okla. 2006) ("Oklahoma law has consistently recognized that an officer or director of a corporation may be held personally liable for his torts irrespective of whether the corporation for which he was acting was a tort-feasor or not or whether the defendant was acting in its behalf as an agent. . . . Because the instant lawsuit involves tort claims against [the corporate officer] personally and is not merely an action to recover on a corporate debt, neither the statutory nor the common law of Oklahoma shields him from liability.") (internal quotations omitted); *Samara v. Southwestern Bell Yellow Pages, Inc.*, No. CIV-06-494, 2006 WL 1805946, at * 3 (W.D. Okla. June 29, 2006) (finding corporate officer was not fraudulently joined in tort claims for invasion of privacy and gross negligence because the plaintiff alleged that the defendant personally participated in the alleged tort "as the person who solicited the sale, acquired the necessary information, was involved in the preparation of the plaintiffs' ad, and knew of their privacy concerns").

In addition, courts have held corporate officers personally liable for the types of torts alleged in this case, so long as a plaintiff can demonstrate that the officer is an "actual participant in the tort." *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) ("A corporate officer is

5

individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort.") (affirming finding of corporate officer's personal liability for tort of unfair competition where officer "authorized and approved" relevant actions and therefore participated in the wrongful acts); *Solo Cup Co. v. Paper Mach. Corp.*, 359 F.2d 754, 759-60 (7th Cir. 1966) (affirming finding of corporate officers' personal liability for tort of unfair competition where record showed that officers purposely prevented the plaintiff from discovering that they were creating a machine identical to the plaintiff's); *see also Al-Site Corp v. VSI Int'l, Inc.*, 174 F.3d 1308, 1331 (Fed. Cir. 1998) (explaining that corporate officers can be personally liable for patent infringement but holding that corporate officer could not be held personally liable in that case because he acted pursuant to a "good faith belief of noninfringement engendered by advice of counsel" and did not "overstep" his authority as CEO); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986) (explaining that "officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort" and affirming finding of corporate officers' personal liability for patent infringement where officers were "directly responsible for the design and production of the infringing chairs").

Here, AllTech alleges that Scronce was an actual participant in the wrongful actions giving rise to its claims. Specifically, with respect to misappropriation of trade secrets and unfair competition, AllTech alleges that Scronce personally contacted AllTech employees, obtained trade secret information, traveled to Oklahoma, and ultimately set up TowerWorx for the purpose of manufacturing competing towers. (Compl. ¶ 13.) With respect to direct patent infringement, AllTech alleges that Scronce deliberately sold and offered to sell infringing towers manufactured

6

by TowerWorx and that Scronce participated in and had full knowledge of the unlawful activities of TowerWorx. (*Id.* ¶¶ 15, 25, 26.) With respect to inducing infringement, AllTech alleges that Scronce set up TowerWorx to manufacture infringing communication towers. (*Id.* ¶¶ 25, 26.) Finally, with respect to deceptive trade practices, AllTech alleges that Scronce "made false representation as to the source, sponsorship, approval, or certification of AllTech's goods or services by using pictures of AllTech's products on TowerWorx' website." (*Id.* ¶ 32.) Thus, AllTech has alleged active participation by Scronce in all alleged torts, and AllTech's allegation that Scronce was acting "within the scope of employment" does not shield Scronce from personal liability as a matter of law at this stage of the proceedings.[1]

### D. Misappropriation of Trade Secrets

The relevant Oklahoma statute provides:

"Misappropriation" means:
a. acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;[2] or
b. disclosure or use of a trade secret of another without express or implied consent by a person who:
(1) used improper means to acquire knowledge of the trade secret; or
(2) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

---

[1] Defendants' cited cases in the context of contract law are inapposite. *See, e.g., Carter v. Schuster*, 227 P.3d 149, 156 (Okla. 2009) (explaining general principle that agent only binds his principal, and not himself individually, when he acts within scope of his authority and for a lawful purpose) (holding that corporate officer who did not defraud or commit wrongful act was not required to arbitrate pursuant to a contract that he signed only as manager and agent for the corporation). Defendants' cited case involving the tort of fraud is factually distinguishable. *See Seitsinger v. Dockum Pontiac, Inc.*, 894 P.2d 1077, 1080 (Okla. 1995) (holding that corporate officer of car dealership could not be held liable for fraud where he had no connection to the relevant car sale except as owner of the dealership).

[2] "Improper means" includes "breach or inducement of a breach of a duty to maintain secrecy." Okla. Stat. tit. 78, § 86(1).

7

> (a) derived from or through a person who had utilized improper means to acquire it; or
> (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> (c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> (3) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Okla. Stat. tit. 78, § 86(2) (footnote added). "Trade secret" is broadly defined as any "information" that (1) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *See* 78 O.S. § 86(4). Defendants argue that the Complaint fails to state a claim for misappropriation of trade secrets because there are insufficient facts "to support the conclusion that Scronce and Telworx knew or had reason to know that Brothers and Abel had trade secret information, that they owed a duty to Plaintiff to maintain secrecy, or that they had utilized improper means to acquire any such information." (Mot. to Dismiss 8.) Defendants further argue that Plaintiffs' Complaint does not sufficiently allege any items that qualify as "trade secrets" under Oklahoma law.

First, AllTech has alleged sufficient facts to state a claim for misappropriation of trade secrets. The Complaint alleges that Scronce and TelWorx used improper means to acquire trade secrets and then used those trade secrets to form TowerWorx and manufacture an infringing product. Specifically, Scronce and TelWorx allegedly communicated with Brothers and Abel via email and phone while Brothers and Abel were employed with AllTech. The factual deficiency identified by Defendants is AllTech's failure to allege that Scronce and TelWorx knew, at the time they acquired this information from AllTech's employees, that such information was confidential. This is,

8

however, implicit in the Complaint and the overall scheme to use certain of AllTech's trade secret information to allow TowerWorx to compete with AllTech. If Scronce ultimately did not know or have reason to know that the relevant information was acquired by Brothers and Abel "under circumstances giving rise to a duty to maintain its secrecy or limit its use," *see* Okla. Stat. tit. 78, § 86(2)(b)(2)(b), this would be relevant to liability. However, the Court construes the Complaint as alleging that Scronce and TelWorx knew or had reason to know about the confidential nature of the information obtained from Brothers and Abel.

Second, AllTech has sufficiently alleged a trade secret consisting of "customer lists" that are subject to a non-disclosure provision. Oklahoma's definition of trade secret does not categorically exclude certain categories of information. *Pre-Paid Legal Servs., Inc. v. Harrell*, No. CIV-06-19, 2008 WL 111319, at * 11 (E.D. Okla. Jan. 8, 2008) (applying Oklahoma law) ("There is virtually no category of information that cannot, as long as the information is protected from disclosure to the public, constitute a trade secret.") (internal quotations omitted). Further, Oklahoma has adopted the general rule that "an employee's knowledge of his employer's customers, acquired by him as an ordinary employee and not by virtue of any peculiar trust or confidence placed in him, is not a trade secret, *and in the absence of an express prohibitory agreement*, the employee may on a change of employment solicit such customers as long as he proceeds from his memory rather than by the unauthorized use of a list of customers." *Cent. Plastics Co. v. Goodson*, 537 P.2d 330, 334 (Okla. 1975) (emphasis added); *Chilcutt Direct Mktg., Inc. v. Carrol Corp.*, __ P.3d __, 2010 WL 3194903, at * 4 (Okla. Civ. App. May 7, 2010) (jury concluded that a written customer list was a "trade secret" and awarded damages). Defendants argue that AllTech "does not allege that the customer lists . . . contain information that was not readily ascertainable." (Reply in Support of Mot. to

Dismiss 5). However, the Court disagrees with this characterization of the Complaint, as Plaintiff clearly alleges that the customer lists "were subject to reasonable efforts to maintain their secrecy, including but not limited to AllTech's non-disclosure provisions in the employee handbook." (Compl. ¶ 12.) This is sufficient to allege that the customer lists were a protected "trade secret" under Oklahoma law.[3]

### D. Patent Infringement

AllTech alleges two types of infringement: direct infringement in violation of 35 U.S.C. § 271(a) and inducement of infringement in violation of 35 U.S.C. § 271(b). The parties briefs address each type separately.

#### 1. Direct Infringement

Defendants concede that AllTech has stated a claim for TelWorx for direct infringement under 35 U.S.C. § 271(a) but argues that Scronce cannot be held personally liable for such infringement. For the reasons explained *supra* Part II.C, AllTech's allegations are sufficient to allege that Scronce deliberately, personally, and actively participated in the tort of direct infringement under 35 U.S.C. § 271(a).

#### 2. Inducement of Infringement

To establish liability for inducing infringement, "a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (internal quotations and alterations omitted). Thus, courts have clarified that "mere knowledge of possible

---

[3] The Court need not analyze the other alleged trade secrets because the allegations related to customer lists are sufficient to allow this claim to proceed.

infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Id.* (internal quotations omitted). Defendants contend that AllTech's allegations are insufficient to state a claim for inducing infringement under 35 U.S.C. § 271(b) against Scronce or TelWorx because AllTech failed to allege the essential element of specific intent to encourage TowerWorx' infringement. Instead, Defendants contend that AllTech has only alleged "knowledge" of TowerWorx' infringing activities. (*See* Mot. to Dismiss 10, 13.)

The Complaint alleges an overall scheme whereby Scronce and TelWorx "set up" TowerWorx "to manufacture infringing communication towers." (Compl. ¶ 25.) The Complaint further alleges that Scronce "participated in and had full knowledge of the unlawful activities of TowerWorx." (*Id.* ¶ 15.) These allegations, construed favorably, go beyond mere "knowledge" of possible infringement by TowerWorx. By alleging that Scronce and TelWorx "set up" another corporation for the deliberate purpose of infringing the '883 Patent, AllTech has sufficiently pled the element requiring active and knowing aiding and abetting of another's direct infringement.

### E. Unfair Competition

AllTech's unfair competition claim is based on the same facts underlying its misappropriation claim. Defendants contend that AllTech's unfair competition claim fails because "AllTech has not alleged that any protectable [sic] trade secret has been unlawfully acquired." (Reply in Support of Mot. to Dismiss 7.) For the same reasons explained *supra* Part II.D, the Court rejects this argument.

### F. Deceptive Trade Practices

This claim relates to the alleged use of AllTech's product picture on the TowerWorx website. Defendant argues that "AllTech provides no substantive allegations of any conduct committed

11

directly by Scronce or TelWorx that is related to the TowerWorx website" and that AllTech failed to allege that "Scronce or TelWorx had any control or influence over the TowerWorx website." (Reply in Support of Mot. to Dismiss 7.) This argument is simply without merit based on a plain reading of the Complaint. AllTech alleges that Scronce and TelWorx "used AllTech's product pictures on the TowerWorx website to sell competing cellular towers" and that Scronce "participated in and had full knowledge of the unlawful activities of TowerWorx." (Compl. ¶¶ 10, 15.) AllTech further alleges that "[b]y using pictures of AllTech's products on TowerWorx' website, *Defendants* have advertised goods which differ from those offered for sale in the advertisements." (*Id.* ¶ 34.) Accepting these allegations as true, the Complaint alleges that Scronce and TelWorx, and not some other individual associated with TowerWorx, controlled and/or directed the content of the TowerWorx website. Therefore, Defendants' argument regarding factual pleading deficiencies is rejected.

### III.    Motion to Amend

In accordance with the Court's scheduling order, both Defendants sought leave to file an amended answer, and TelWork sought leave of Court to assert a counterclaim. Both requests are based on Defendants' "discovered evidence of prior art." (Mot. to Amend 2.) AllTech urged the Court to delay ruling on such motion until the Court ruled on the pending motion to dismiss but did not otherwise object to Defendants' proposed amendment and counterclaim. Accordingly, Defendants' motion to amend will be granted.

### IV.    Conclusion

Defendants Telworx and Tim Scronce's Partial Motion Dismiss (Doc. 15) is DENIED in its entirety, and Defendants' Motion to File Amended Answers and Counterclaim (Doc. 38) is

GRANTED. Defendants may file the documents attached as Exhibits 1-3 to their motion no later than five days from the entry of this Order.

IT IS SO ORDERED this 20th day of September, 2010.

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**